# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————
)
**UNITED STATES of AMERICA**                                     )
)
**v.**                                     )          **Criminal No.**
)          **09-10315-FDS-5**
**ANGEL MORALES,**                                     )
)
**Defendant.**                                     )
———————————————————————)


## MEMORANDUM AND ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

**SAYLOR, J.**

This is a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. Petitioner Angel Morales, also know as "Adonis," seeks to vacate his sentence on the ground that he received ineffective assistance of counsel in violation of his Sixth Amendment rights. In particular, he contends that his counsel failed to perform an adequate review of the evidence that was ultimately used against him at trial; failed to use documentary evidence to impeach the government's chief witness; failed to investigate the fact that the vehicle seized by the Drug Enforcement Agency, which was found to contain a hidden compartment, did not belong to him; failed to call a material witness; and failed to advise him of his right to testify on his own behalf at trial.

## I.    Background

Starting around 2008, Rancis Osiris Santana began purchasing large quantities of cocaine from a supplier in California, which he then resold. (Gov. Opp. at 2). Santana testified that, in the summer of 2009, he received a shipment of 44 kilograms of cocaine. (*Id.*). He contacted

Morales, also known as "Adonis," who agreed to purchase ten "real nice ones" (that is, ten kilograms) for $33,000 per kilogram.  (*Id.*).

On July 17, 2009, law enforcement intercepted a telephone call between Morales and an individual identified as "Bolo."  (*Id.* at 3).  Morales told Bolo, "Damn, these guys got me some really nice stuff."  (*Id.*).  He told Bolo he had received ten kilograms from "that guy," and offered to sell it to Bolo for $34,000 per kilogram.  (*Id.*).  In another telephone conversation that same day, Juan Nova, also known as "Pastor"—who shared an apartment with Morales—told Bolo that "the CD arrived last night" and that "they set it for me at 33.  For me and Adonis.  They gave Adonis ten and they gave me ten at 33."  (*Id.* at 2-3).

In October 2009, Santana purchased 54 kilograms of cocaine from a supplier in California.  (*Id.* at 3).  Law enforcement intercepted a series of telephone calls between Santana and Nova discussing the shipment and negotiating a price for purchase.  (*Id.* at 3-4).  In one of those telephone calls, Santana asked Nova, "Hasn't Adonis called to see if that stuff came or not?"  (*Id.* at 4).  Nova replied, "He's been calling me for days.  He was asking me . . . last night we were talking about it, he's desperate."  (*Id.*).  In another telephone call, Nova, attempting to negotiate a better price, told Santana that the going price for cocaine in Lawrence was $31,500 per kilogram.  (*Id.*).  To confirm, he asked Morales, who was standing nearby, "Adonis, did he say at thirty-one and a half?"  A voice in the background could be heard saying "Yes."  (*Id.*).

After further negotiations, Santana agreed to sell Nova five kilograms of cocaine.  (*Id.*).  He asked if Morales wanted anything, and Nova responded that he would call him back.  (*Id.*).  Fifteen minutes later, Nova called Santana back and said, "Adonis says to . . . to send him ten," noting "The guy always gets ten.  He gives half up front."  (*Id.*).  Santana then told Nova to "tell Adonis that . . . that it's not to take long."  (*Id.*).  In another recorded telephone conversation

between Santana and his brother, he confirmed that Nova was going to purchase five kilograms while Morales was going to purchase ten kilograms. (*Id.* at 4-5).

Prior to the sale, Santana instructed one of his associates to write down in a notebook the names of everyone who was going to purchase some portion of the 54 kilogram cocaine shipment. (*Id.* at 5). Among the names listed was "Adoni," whom Santana identified as Adonis. (*Id.*).

On October 9, 2009, law enforcement officers raided Santana's apartment and arrested him and Nova. (*Id.*). An open box of cocaine was found on the kitchen table. (*Id.*). In total, approximately 54 kilograms of cocaine were recovered from the apartment and a vehicle parked nearby. (*Id.*).

An investigation following Santana and Nova's arrest revealed that Morales frequently called Nova's telephone. (*Id.*). During the course of the investigation, Drug Enforcement Agency ("DEA") agents observed Morales driving a blue Chrysler Pacifica. (*Id.* at 3). The Pacifica was later seized and found to contain a hidden compartment. (*Id.*).

On October 21, 2009, a grand jury returned an indictment against Morales and six others (including Santana and Nova) for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. That same day, Morales retained attorney Robert Sheketoff, who entered an appearance on his behalf.[1]

On October 29, 2009, Morales consented to the entry of an order of pre-trial detention. Morales was detained at the Wyatt Detention Center pending trial.

On November 19, 2010, Morales filed a motion to dismiss appointed counsel and to appoint new counsel, citing disagreement on strategy, lack of understanding, and a failure to

---

[1] On October 14, 2009, another attorney, Matthew Feinberg, had been appointed for Morales. Feinberg was terminated on February 8, 2010. It is unclear whether he performed any work on behalf of Morales.

present his best interests.  On November 22, 2010, attorney Sheketoff filed a motion to withdraw as retained counsel, citing a breakdown in the attorney-client relationship.  On December 9, 2010, after a hearing, attorney Sheketoff was terminated and attorney Robert Goldstein—the subject of this ineffective-assistance claim—was appointed to represent Morales.

On February 10, 2011, Morales, through counsel, filed a motion to continue the trial—originally scheduled for March 14, 2011—stating that recently appointed counsel needed more time to prepare for trial and file any motions to suppress.  The trial was rescheduled for June 6, 2011.  The trial was subsequently rescheduled again for August 1, 2011, after several defendants, including lead defendant Santana, entered changes of plea.

On June 27, 2011, Morales, through counsel, filed a motion *in limine* to exclude testimony regarding the alleged drug-related "code" used by defendants as well as testimony regarding general drug-trafficking practices in the Boston area.  On July 20, 2011, he filed another motion *in limine* to exclude references to his aliases.  Those motions were denied.

On July 25, 2011, Morales, through counsel, filed another motion to continue the trial. As reason for the continuance, he noted that the government had recently provided notice that Santana was a government witness.  Attorney Goldstein requested more time in order to prepare a cross-examination of Santana.  In the motion, Goldstein noted that he needed to review the many telephone conversations between Morales and Santana "in order to properly prepare to cross-examine Mr. Santana and to effectively represent the defendant."  Goldstein cited to *Rompilla v. Beard*, 545 U.S. 374 (2005), which held that counsel was ineffective for failing to review materials in the government's possession.  Goldstein also stated that Morales himself also needed to review the telephone calls in order to assist in his defense.  He also stated that he needed additional time to conduct an independent investigation of Santana, citing *Cullen v.*

4

*Pinholster*, 563 U.S. 170 (2011).  That motion was granted, and the trial was rescheduled once again, this time for October 24, 2011.

The trial went forward on October 24, 2011.  After four days of evidence, the jury returned a verdict of guilty on October 28, 2011.  Sentencing was set for February 2, 2012.  On November 11, 2011, Morales, through counsel, filed a motion for acquittal, challenging the sufficiency of the evidence at trial.  That motion was denied on January 13, 2012.

Between January and October of 2012, Morales, through counsel, moved five times to continue the sentencing.  As grounds for the continuances, he cited, among other things, Morales's inability to access disks containing the intercepted telephone calls at the Wyatt Detention Center.

On November 2, 2012, Morales filed a notice of his intent to proceed *pro se* and a motion for a new trial, contending that he had been unable to review the evidence used against him at trial and that the government had presented perjured testimony at trial.  That same day, Goldstein filed a motion to withdraw as counsel, stating that, given the arguments made in Morales's *pro se* motion, new counsel should be appointed so that he could receive independent advice moving forward.  The motion to withdraw was granted, and attorney Robert Griffin was appointed to represent Morales.  On December 13, 2012, retained counsel Oriosto Medrano Santana entered an appearance on behalf of Morales.

On January 18, 2013, Morales was sentenced to a term of imprisonment of 120 months. He appealed his conviction and sentence on February 1, 2013.  The First Circuit affirmed his conviction and sentence on June 24, 2014.

While his appeal was pending, Morales, through counsel, filed a motion for a new trial on April 6, 2013.  He contended that a new trial was required due to newly discovered evidence,

citing his inability to review the evidence against him before trial and the government's use of the perjured testimony of Santana.  On August 29, 2013, this Court denied that motion, concluding that the inability to access known evidence is not equivalent to newly discovered evidence and that Morales had failed to show that Santana's testimony was perjured.

On June 26, 2015, Morales, proceeding *pro se*, filed this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  On June 17, 2016, the Court issued an order directing Morales to file an affidavit providing factual information in support of his claims.  That affidavit was filed on July 6, 2016.  The Court then ordered attorney Goldstein to file a responsive affidavit, which he did on August 18, 2016.  The Court then held an evidentiary hearing on the motion on December 20, 2016, at which Morales and attorney Goldstein testified.

## II.    <u>Legal Standard</u>

Under 28 U.S.C. § 2255(a),

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a); *see also Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002) ("In essence . . . section 2255 is a surrogate for the historic writ of habeas corpus.").

A petitioner can obtain post-conviction relief under § 2255 "only when the petitioner has demonstrated that his sentence '(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack.'"  *Moreno-Morales v. United States*, 334 F.3d 140, 148 (1st Cir. 2003) (quoting *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998)).  "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which,

6

if uncorrected, will 'result[ ] in a complete miscarriage of justice,' or irregularities that are

'inconsistent with the rudimentary demands of fair procedure.'" *David*, 134 F.3d at 474 (quoting

*Hill v. United States*, 368 U.S. 424, 428 (1962)).  A "petitioner bears the burden of establishing

that [he] is entitled to relief under § 2255." *Troy v. United States*, 946 F. Supp. 2d 172, 177 (D.

Mass. 2012) (citing *David*, 134 F.3d at 474).

### III.   <u>Analysis</u>

The standard for determining claims of ineffective assistance of counsel are set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must demonstrate

that (1) counsel's performance "fell below an objective standard of reasonableness" and (2)

counsel's performance prejudiced the defense so that there is a "reasonable probability" that the

outcome would have been different absent the deficient performance.  *Id*. at 687-88, 694-95.

Reviewing courts are not required to address the two prongs in that order; if it is possible to

dispose of a claim on the grounds that petitioner did not suffer prejudice, a court does not need to

address the reasonability of counsel's performance.  *Id.* at 697.

Under *Strickland*, reasonable performance on the part of the attorney is presumed, and

petitioner bears the burden of overcoming that presumption.  *See id.* at 689; *Cirilo-Munoz v.

United States*, 404 F.3d 527, 530 (1st Cir. 2005).  Furthermore, "judicial scrutiny of counsel's

performance must be highly deferential." *Strickland*, 466 U.S. at 689.  If an attorney's choices

or courses of action can reasonably be characterized as trial strategy and were "made after

thorough investigation of law and facts relevant to plausible options," those decisions "are

virtually unchallengeable . . . ." *Strickland*, 466 U.S. at 690; *Sleeper v. Spencer*, 510 F.3d 32, 38

(1st Cir. 2007) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)) (stating that counsel "has

'wide latitude in deciding how best to represent a client'").

Even if a petitioner can show that the attorney's performance was objectively unreasonable, he or she must also show prejudice. To do so, a petitioner must show that there is a "probability sufficient to undermine confidence in the outcome" that if it were not for counsel's deficient performance, the petitioner would have obtained a more favorable result. *Strickland*, 466 U.S. at 694.

Petitioner alleges that his trial counsel's performance was objectively unreasonable based on five perceived errors: (1) counsel's failure to perform an adequate review of the intercepted telephone calls that were used against him at trial; (2) his failure to use documentary evidence to impeach the government's chief witness, Rancis Osiris Santana; (3) his failure to investigate the fact that the Chrysler Pacifica seized by the DEA, which was found to contain a hidden compartment, did not belong to him; (4) his failure to call Nova as a witness; and (5) his failure to advise petitioner of his right to testify on his own behalf at trial. Each claim will be addressed in turn.

### A.    <u>Failure to Review Telephone Calls</u>

Petitioner first contends that trial counsel's performance was ineffective due to his failure to perform an adequate review of the intercepted telephone calls used against him at trial. In particular, petitioner contends that he repeatedly reached out to counsel requesting that they review the telephone calls together, but that counsel refused. According to petitioner, instead of reviewing the telephone calls together, counsel arranged to have disks containing the calls sent to petitioner at the Wyatt Detention Center, where he was not permitted to access them. He contends that by not having the opportunity to review the telephone calls, he was deprived of his right to assist his counsel in his own defense.

According to counsel's testimony, he brought his laptop to meetings with the petitioner

on three occasions for the purpose of reviewing the telephone calls together:  April 24, 2011, July 25, 2011, and October 14, 2011.[2]  He further testified that during the October 14, 2011 meeting, he and petitioner went through the calls slowly and in detail.  In addition, he contends that he made multiple requests to have the evidence available to petitioner at Wyatt.  The Court finds attorney Goldstein's testimony on the subject to be credible.

Petitioner has not met his burden of overcoming the presumption that counsel's performance in connection with the review of the telephone calls was reasonable.  At trial, the government introduced twelve intercepted telephone calls in which Morales was either a participant or was discussed, and defense counsel was obviously aware of those twelve calls prior to trial.  (Tr. at 3:4; Def. 2d Mot. to Continue at 3).  Even if petitioner was only able to review the calls with counsel during their October 14, 2011 meeting, it is not unreasonable to expect a single meeting to be sufficient to review the twelve key telephone calls that were admitted against petitioner.  Furthermore, counsel moved to continue the trial specifically so that both he and petitioner could review not only those twelve calls, but many others that were part of the government's wiretap investigation.  (Def. 2d Mot. to Continue at 2-3).  While certainly not conclusive evidence that counsel did in fact review those calls with petitioner, it does support the presumption of reasonableness.

In any event, even if petitioner could prove that counsel's performance was unreasonable, he has failed to demonstrate prejudice.  It is unclear how petitioner believes the trial would have gone differently had he received more opportunities to review the calls.  His petition is silent on that point, and at the evidentiary hearing he simply stated that he would have explained his side of the story better.  However, the trial transcripts make clear that counsel effectively cross-

---

[2] It appears that on at least one of those occasions, petitioner—who speaks only Spanish—was unable to review the calls with counsel due to a disagreement with the interpreter.

examined the government's witnesses as to the content of the intercepted telephone calls (the twelve involving petitioner as well as others) and that he did so in a manner consistent with the position that petitioner continues to take to this day:  namely, that Nova lied to Santana about petitioner's desire to purchase cocaine in order to purchase more for himself.  (*See, e.g.,* Tr. at 3:130-31, 3:161, 3:165-66).  Petitioner has thus failed to show a reasonable probability that he would have received a more favorable outcome had he been able to review the telephone calls. *See Strickland*, 466 U.S. at 694-95.

### B.   <u>Failure to Impeach Santana</u>

Petitioner next contends that trial counsel's assistance was rendered ineffective due to his failure to use documentary evidence to impeach Rancis Osiris Santana, whom he characterizes as the government's chief witness.  Specifically, he contends that counsel should have used the following evidence to impeach Santana's credibility:  evidence that Santana lied to DEA agents about fearing for his life; evidence that Santana told DEA agents in 2011 that he had received the first 44 kilogram shipment of cocaine in August 2009, but that he said he had sold petitioner cocaine on July 17, 2009; and evidence that Santana may have lied about having 12 kilos of cocaine stolen from him.  Petitioner contends that, had trial counsel used that evidence to impeach Santana, the jury would not have believed his testimony.

When a petitioner asserts that counsel failed to challenge the credibility of a government witness, the First Circuit considers three factors:  "first, the strength of the prosecution's case; second, the effectiveness of the defense that was presented at trial; [and] third, the potential value of . . . new avenues for cross-examination in undermining the credibility of the government witnesses' testimony."  *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (internal quotation marks omitted).

As to the first factor, petitioner contends that Santana was the government's chief witness and that, had counsel adequately impeached his credibility, the government would not have been able to corroborate his story. However, Santana's testimony was not the only evidence presented by the government. Rather, the government presented numerous telephone calls discussing or referring to petitioner's participation in drug-trafficking activities, including one telephone call in which petitioner himself said he had received "some really nice stuff" for "33 and a half" and offered to sell it "with the four." (Tr. at 3:177-79; *see also, e.g.,* Tr. at 3:86, 3:98-102, 3:130-31). In addition, the government presented telephone records showing many calls between petitioner and the other defendants involved in the conspiracy, including calls made right around the time that the 54 kilogram shipment of cocaine was seized from Santana's apartment. (*See, e.g.,* Tr. at 3:65-71, 3:115-16). The government also produced evidence of petitioner's name in what appeared to be a drug ledger found in Santana's apartment. (Tr. at 3:109-10). While true that there was only one intercepted telephone call in which petitioner himself directly discussed drug-trafficking activities, there was nonetheless substantial evidence corroborating Santana's testimony.

However, even if the first factor weighed in petitioner's favor, the second and third factors weigh clearly against him. As to the second factor, the trial transcripts make clear that counsel adequately and effectively called Santana's credibility into question. Counsel began his cross-examination of Santana by questioning him about the deal he struck with the government. (Tr. at 4:102-07). He then questioned Santana about numerous occasions in which Santana had lied to the government. (*See, e.g.,* Tr. at 4:109-11, 4:116-17, 4:120-21, 4:135-36). He even got Santana to agree that he had a "very well documented history of lying." (Tr. at 4:115). Counsel appeared well prepared, exhibiting familiarity with the past instances of Santana's dishonesty.

11

As to the third factor, it does not appear that additional avenues of impeachment would have added material value to petitioner's defense.  During his cross-examination, counsel identified at least nine separate occasions on which Santana had lied to police, prison officials, and other government agents.  (*See* Tr. at 4:110-121, 4:135-36).  It is far from likely that adding a few more instances of dishonesty would have changed the jury's perception of Santana.  *See United States v. Watkins*, 486 F.3d 458, 466 (8th Cir. 2007) (noting that "it is very difficult to show the trial outcome would have been different had specific questions been asked on cross examination," and finding no ineffective assistance where additional impeachment would have been cumulative and other evidence corroborated testimony) (internal quotation marks omitted) *vacated on other grounds*, 552 U.S. 1091 (2008).  Counsel's failure to cross-examine using the specific evidence pointed to by petitioner did not render his performance either unreasonable or prejudicial.

### C.      Failure to Investigate that the Seized Chrysler Pacifica Did Not Belong to Petitioner

Petitioner next contends that counsel's assistance was ineffective due to his failure to investigate that the seized Chrysler Pacifica—which was found to contain a hidden compartment—belonged to Nova.  He further contends that counsel unreasonably allowed the government to suggest to the jury that the car belonged to him.

Defense counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  Here, however, the Court need not inquire into the reasonableness of counsel's investigations.  The Pacifica's registration—showing that it was registered to Nova and not petitioner—was in fact entered into evidence.  (Tr. at 2:5).  Furthermore, the government elicited testimony that the Pacifica was registered to Nova, and defense counsel subsequently reiterated and clarified that

the car was not owned by petitioner.  (Tr. at 2:189, 2:197-98).  Thus, it appears that counsel did

investigate the ownership of the car and, in any event, any alleged deficiency in his investigation

was non-prejudicial as he did, in fact, make clear during the trial that the car was not registered

to petitioner.

       **D.**      <u>**Failure to Call Nova as a Witness**</u>

       Petitioner next contends that counsel's performance was ineffective due to his failure to

call Nova as a witness.  Part of the defense's theory of the case was that Nova had used

petitioner's name in order to purchase more cocaine for himself because Santana refused to sell

large quantities to any one person.  Petitioner contends that counsel should have called Nova as a

witness in order to elicit testimony to that effect.

       However, petitioner has offered no evidence or argument to rebut the "strong

presumption that counsel's conduct [fell] within the wide range of reasonable professional

assistance."  *Strickland*, 466 U.S. at 689.  Petitioner has therefore not met his burden of

"alleg[ing] and demonstrat[ing] that his counsel's error clearly resulted from neglect or

ignorance rather than from informed, professional judgment."  *Barrett v. United States*, 965 F.2d

1184, 1193 (1st Cir. 1992) (internal quotations marks omitted).  In fact, it appears that there were

sound reasons to not call Nova to the stand.  Part of the defense's theory of the case was that

Nova was a liar who could not be trusted.  (*See* Tr. at 2:23).  It is well within the realm of what is

reasonable to decline to call a witness after repeatedly calling into question that person's

credibility.  Furthermore, petitioner's contention that Nova would have testified that he lied to

Santana about petitioner's desire to purchase cocaine in order to purchase more for himself is

pure speculation.  Thus, even if counsel's decision not to call Nova as a witness had been

unreasonable, petitioner has not established a "reasonable probability" that calling Nova would

have changed to outcome of the case and has therefore failed to demonstrate prejudice.  *See Strickland*, 466 U.S. at 694-95.

### E.      Failure to Advise Petitioner of His Right to Testify

Finally, petitioner contends that counsel's assistance was ineffective due to his failure to inform him of his right to testify at trial in his own defense.  According to petitioner, after the close of the government's case, he told counsel that he wanted to testify, but counsel responded that his testimony was not necessary as there was an eighty-percent likelihood that the jury would return a verdict of not guilty.  Petitioner further contends that counsel never informed him that the decision whether or not to testify ultimately rested with him.  Thus, he claims that his waiver of his right to testify was not knowingly and intelligently made.

A criminal defendant has a constitutional right to testify in his own defense.  *See Rock v. Arkansas*, 483 U.S. 44, 52-53 & n.10 (1987).  In order to protect that right, defense counsel have a duty to consult with their clients regarding their right to testify.  *See Owens v. United States*, 483 F.3d 48, 58 (1st Cir. 2007).  The decision to waive ones right to testify rests with the criminal defendant himself, not with his counsel.  *Id.*  "[T]he failure to inform a defendant of his right to testify constitutes performance outside of an objective standard of reasonable competence," and is therefore constitutionally deficient.  *Id.* at 58-59.

At the evidentiary hearing, counsel testified that it is his regular practice to have multiple conversations with his clients about whether to testify and the right to decide whether to testify. He further testified that his notes indicate that near the end of the trial, he did review with petitioner his right to testify, although the that conversation was cut short as counsel was called back to the courtroom in order to address an issue concerning closing arguments.  He also testified that he does not recall telling petitioner that there was an eighty-percent likelihood of

success, and that his stock response when asked about likely outcomes is that, even in the best case, there is never more than a fifty-percent chance of success.  Finally, he testified that he recalls having been aware of prior convictions with which petitioner could have been impeached, and that it is his regular practice to advise clients of the risks of impeachment but not to tell them that they cannot testify due to that risk.

The Court finds counsel's testimony—based on his notes from petitioner's representation as well as his twenty years of experience representing criminal defendants—to be entirely credible.[3]  Furthermore, petitioner has not presented corroborating evidence tending to discredit counsel's testimony.  *See Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987) (affirming district court's dismissal of § 2255 motion, without holding evidentiary hearing, where petitioner failed to corroborate allegation that counsel had forbade him from testifying).  The Court therefore finds that counsel did in fact inform petitioner of his right to testify.

Furthermore, even if the Court were to discredit counsel's testimony, petitioner's own allegations suggest that he was aware that he had a right to testify.  According to petitioner, he told counsel he wanted to testify, but counsel told him his testimony was not necessary because there was an eighty-percent change that the jury would return a verdict of not guilty.  In *Siciliano*, the First Circuit considered similar facts and held that petitioner had failed to demonstrate that his constitutional right to testify had been violated.  834 F.2d at 31.  There, the petitioner alleged that his attorney told him that the Commonwealth "would not make out a case of proof beyond a reasonable doubt," and that, therefore, he should not testify.  *Id.*  The First Circuit concluded that it appeared that petitioner "knew that, legally speaking, he could testify if

---

[3] It is particularly unlikely that attorney Goldstein, an experienced criminal defense attorney, would have told Morales that he had an eighty percent chance of acquittal.  Such a statement would have been absurd in virtually any criminal case, but particularly so under the circumstances of this case, given the weight of the evidence.

he chose; but he chose not to testify as a matter of trial strategy, perhaps at the strong urging of counsel." *Id.* Thus, based on counsel's testimony as well as petitioner's own statements, petitioner has failed to overcome the presumption that counsel's performance was reasonable.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the motion of Angel Morales to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  April 6, 2017                          United States District Judge